[No. C039614. Third Dist. Mar. 28, 2002.]

STATE WATER RESOURCES CONTROL BOARD, Petitioner, v.
THE SUPERIOR COURT OF YUBA COUNTY, Respondent;
BROWNS VALLEY IRRIGATION DISTRICT et al., Real Parties in
Interest.

910

**COUNSEL**

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, John Davidson,

Clifford T. Lee, Tiffany S. Yee, William D. Cunningham and William Jenkins, Deputy Attorneys General; Craig Wilson, Andrew H. Sawyer and Daniel N. Frink for Petitioner.

No appearance for Respondent.

Bartkiewicz, Kronick & Shanahan, Alan B. Lilly and Ryan S. Bezerra for Real Parties in Interest.

## OPINION

SCOTLAND, P. J.—In this water law action, the State Water Resources Control Board (the Board) seeks a writ of mandate to vacate the order of respondent superior court disqualifying the California Attorney General's Office from further representing the Board because the Attorney General also is representing the Department of Fish and Game (DF&G) in the litigation.

The disqualification order was based on Water Code section 186 (hereafter section 186), which provides in part: "The Attorney General shall represent the board and the state in litigation concerning affairs of the board unless another state agency, represented by the Attorney General, is a party to the action. In such case the legal counsel of the board shall represent the board."

As we will explain, respondent superior court correctly held that section 186 precludes the Attorney General from simultaneously representing the Board and DF&G, another state agency, in litigation concerning affairs of the Board. However, the court incorrectly concluded that DF&G may not choose to retain separate counsel, thus avoiding the prohibited dual representation.

Hence, we shall issue a peremptory writ of mandate directing respondent superior court to vacate its order disqualifying the Attorney General from representing the Board and to reconsider the motion, taking into account whether DF&G obtains counsel to substitute for the Attorney General in the underlying superior court proceedings.

### FACTS AND PROCEDURAL BACKGROUND

In 1991, DF&G completed a fisheries management plan for the lower Yuba River and asked the Board to conduct an administrative hearing to review and revise stream flow and temperature requirements on the river.

The Board conducted hearings in 1992 and 2000, during which DF&G was represented by deputy attorneys general assigned from the Sacramento office of the Attorney General's natural resources section.

In March 2001, the Board adopted its Water Right Decision No. 1644, which amends several water right permits and licenses and requires other actions to protect fish in the lower Yuba River.

The Yuba County Water Agency (YCWA) and the Browns Valley Irrigation District (Browns Valley) then commenced litigation challenging Water Right Decision No. 1644. YCWA and Browns Valley filed two petitions for writs of mandate each in the respondent superior court (the court); one of the petitions was combined with a complaint for inverse condemnation. All four of the petitions named DF&G as a real party in interest. Other parties filed three additional petitions challenging Water Right Decision No. 1644. The court ordered the seven cases consolidated.

In May 2001, YCWA and Browns Valley separately filed motions to disqualify the Attorney General from representing the Board in the consolidated cases. They argued section 186 precludes the Attorney General from representing the Board because deputy attorneys general had entered appearances on behalf of both the Board and DF&G. YCWA and Browns Valley also argued section 186 requires the Board's legal counsel to represent the Board in the consolidated cases.

The Board, represented by deputy attorneys general from the Attorney General's San Francisco Office, filed opposition to the motion. Among other things, the Board asserted that the Attorney General had advised the Board and DF&G of the potential conflicts of interest which might arise as a result of the Attorney General's representation of both agencies; that both agencies had consented to continued representation by the Attorney General; and that the "consent agreements" memorializing the agencies' agreement would be provided to the court during the hearing on the motion to disqualify. The Board further asserted that, even if section 186 disqualifies the Attorney General from simultaneously representing DF&G and the Board, it does not require disqualification "[i]f [DF&G] obtains outside counsel to represent it in these cases . . . ."

DF&G, represented by deputy attorneys general from the Attorney General's Sacramento Office, also opposed the motion to disqualify the Attorney General DF&G supported its opposition with a declaration stating that, since 1991, the deputy attorneys general from the Attorney General's Sacramento Office assigned to represent DF&G and the deputy attorneys general from

the Attorney General's San Francisco Office assigned to represent the Board "have not had any discussions nor exchanged or circulated any document relating to the Board's lower Yuba River adjudicatory proceedings that reflect any attorney-client or work-product materials or that would have resulted in any *ex parte* communications as described in section 11430.10 of the Government Code."[1]

During the hearing on the motion to disqualify, the court allowed the Board to file under seal a copy of the consent agreement between the Board and the Attorney General—although the court stated it would not admit the agreement into evidence and did not intend to look at it. DF&G then asked to file under seal a copy of the consent agreement between DF&G and the Attorney General, but the court did not rule on DF&G's request.

After hearing argument, the court granted the motion to disqualify the Attorney General from representing the Board. DF&G and the Board then asked the court to allow DF&G to obtain separate counsel in order to permit the Attorney General to continue to represent the Board. The court replied that it would not change the order.

The Board has challenged the court's order by filing both a notice of appeal and a petition for writ of mandate. We stayed further superior court proceedings in the consolidated cases pending filing of opposition and further order of this court. The appeal is pending in *Browns Valley Irrigation Dist. v. State Water Resources Control Bd.*, C039613.

DISCUSSION

I

While an order disqualifying an attorney is appealable (e.g., *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1052-1053, fn. 1 [8 Cal.Rptr.2d 228]), the order also is subject to review by an extraordinary writ petition (*Chambers v. Superior Court* (1981) 121 Cal.App.3d 893, 896-897 [175 Cal.Rptr. 575]). Indeed, "[a] petition for extraordinary relief on the merits accompanied by a request for an immediate stay is preferable, because generally extraordinary writs are determined more

---

[1]Government Code section 11430.10 provides: "(a) While the proceeding is pending there shall be no communication, direct or indirect, regarding any issue in the proceeding, to the presiding officer from an employee or representative of an agency that is a party or from an interested person outside the agency, without notice and opportunity for all parties to participate in the communication. [¶] (b) Nothing in this section precludes a communication, including a communication from an employee or representative of an agency that is a party, made on the record at the hearing. [¶] (c) For the purpose of this section, a proceeding is pending from the issuance of the agency's pleading, or from an application for an agency decision, whichever is earlier."

speedily than appeals. The specter of [improper] disqualification of counsel should not be allowed to hover over the proceedings for an extended period of time for an appeal." (*Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 455 [92 Cal.App.4th 1346b, 111 Cal.Rptr.2d 842].)

■ Accordingly, this case is appropriate for extraordinary writ review. It also is appropriate for issuance of a peremptory writ in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*); see *Ng v. Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961] [*Palma* procedure proper when "there has been clear error under well-settled principles of law and undisputed facts . . . or when there is an unusual urgency requiring acceleration of the normal process"].) Not only is the disqualification issue resolved by application of an unambiguous statute, a delay caused by protracted consideration of the issue may cause substantial harm to YCWA and Browns Valley.[2]

After receiving opposition to the writ petition, we notified the parties that we were considering the issuance of a peremptory writ of mandate in the first instance. We have now received the joint supplemental opposition filed by YCWA and Browns Valley. Thus, we have complied with the procedures delineated in *Palma, supra,* 36 Cal.3d 171.[3]

II

■ The Board begins by contending the order must be reversed because YCWA and Browns Valley lacked standing to seek the Attorney General's disqualification pursuant to section 186. We disagree.

■ In general, a party has standing to challenge governmental action if the party is adversely affected by the action. (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796-797 [166 Cal.Rptr. 844, 614 P.2d 276], citing Davis, 3 Administrative Law Treatise (1958) Standing, § 22.18, p. 291.) "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor."

[2]We take judicial notice of the assertion made by YCWA and Browns Valley in opposition to the Board's petition for writ of supersedeas in the related appeal (*Browns Valley Irrigation Dist. v. State Water Resources Control Bd., supra,* C039613) that protracted delay in resolving the disqualification issue may cause them substantial harm.

[3]It is anticipated that when our opinion in this proceeding becomes final, it will render moot the related appeal (*Browns Valley Irregation Dist. v. State Water Resources Control Bd., supra,* C039613), which raises identical issues.

(*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610].)

This court recently addressed the requirements for personal standing in the analogous context of a mandamus action brought to compel a governmental entity to comply with a statute. (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223 [94 Cal.Rptr.2d 740] (*Waste Management*).) ■ "There are two prongs to the test for the beneficial interest required to pursue an action in mandamus. The first . . . is whether the plaintiff will obtain some benefit from issuance of the writ or suffer some detriment from its denial. The plaintiff's interest must be direct . . . , and it must be substantial. . . . Also, it generally must be special in the sense that it is over and above the interest held in common by the public at large. . . . [¶] The second prong of the beneficial interest test is whether the interest the plaintiff seeks to advance is within the zone of interests to be protected or regulated by the legal duty asserted. . . ." (*Id.* at pp. 1233-1234, citations omitted.)

In *Waste Management*, a corporation in competition with an existing landfill facility filed a petition for writ of mandate, challenging the county's decision to allow the rival facility to accept certain nonhazardous solid wastes without first undergoing review under the California Environmental Quality Act (CEQA). (*Waste Management, supra,* 79 Cal.App.4th at pp. 1229-1232.) However, the corporation lacked personal standing to maintain the action because the corporation's "commercial and competitive interests are not within the zone of interests CEQA was intended to preserve or protect and cannot serve as a beneficial interest for purposes of the standing requirement." (*Id.* at p. 1235.)

■ Assuming the same test for beneficial interest applies here, YCWA and Browns Valley have standing to move to disqualify the Attorney General pursuant to section 186. As litigants challenging the Board's administrative decision, YCWA and Browns Valley have a direct and substantial interest in ensuring that the decision maker is neutral. This interest is greater than that of the public at large, which is not embroiled in the litigation involving the Board's decision. Indeed, if YCWA and Browns Valley had not brought to the court's attention the failure to comply with section 186, it is doubtful that anyone else would have done so. Moreover, this interest is within the zone of interests which section 186 is designed to protect by ensuring that separate counsel represent the decision maker, i.e., the Board, and any other state agency also involved in the litigation.

Nevertheless, the Board asserts that YCWA and Browns Valley lack standing because "only a present or former client can move a court to

disqualify an attorney based on an alleged conflict." We need not decide whether this assertion of law is correct. YCWA and Browns Valley did not move to disqualify the Attorney General based on a claim of an actual conflict of interest; rather, their motions were premised on the Attorney General's failure to comply with the statutory mandate of section 186. YCWA and Browns Valley alluded to the purported conflict of interest between the Attorney General and its two clients only in support of its argument under section 186.

For the reasons stated above, we conclude that YCWA and Browns Valley have standing to raise the violation of section 186.

III

Next, the Board argues that "the superior court abused its discretion in interpreting Water Code[] section 186[] to completely deprive the [Board] of its right to employ counsel of its choice in these cases."

Section 186 states in pertinent part: "The board shall have such powers, and may employ such legal counsel and other personnel and assistance, as may be necessary or convenient for the exercise of its duties authorized by law. [¶] . . . [¶] *The Attorney General shall represent the board and the state in litigation concerning affairs of the board unless another state agency, represented by the Attorney General, is a party to the action. In such case the legal counsel of the board shall represent the board.* Sections 11041, 11042, and 11043 of the Government Code are not applicable to the State Water Resources Control Board. . . ."[4] (Italics added.)

This is a simple, straightforward directive. Because there is no ambiguity in its language, we "presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 119 [113 Cal.Rptr.2d 90].)

Section 186 unambiguously requires the Board's legal counsel, not the Attorney General, to represent the Board when another state agency, represented by the Attorney General, is a party to the action. The application of this rule leads to two obvious conclusions: First, as long as DF&G is represented by the Attorney General, the Board may not be represented by the Attorney General and must be represented by the Board's legal counsel. Second, if DF&G obtains outside counsel to substitute in the place of the Attorney General, the Board may be represented by the Attorney General.

---

[4]Government Code sections 11042 and 11043 generally prohibit state agencies from employing counsel other than the Attorney General, with exceptions in Government Code section 11041.

Despite the plain meaning of the statute, the Board argues that section 186 should not be interpreted in this manner because it (1) denies the Board the "right to choose counsel" in derogation of the policy set out in the first sentence of the statute, and (2) achieves the "absurd result" that the Board is denied the "right . . . to be represented by counsel of [its] choice even if it is the same counsel as another party in the litigation," thereby "put[ting] the [Board] at a disadvantage to all other litigants" by making it "rely on counsel with limited experience in litigation." We are not persuaded.

The first paragraph of section 186 expresses the general rule that the Board may employ legal counsel "as may be necessary or convenient for the exercise of its duties authorized by law." But that general rule is limited by the more specific provision in the third paragraph of the statute, to wit, when the Attorney General represents another state agency in litigation concerning affairs of the Board, the Board cannot be represented by the Attorney General and, instead, must be represented by the Board's legal counsel.

This does not mean, and the court did not direct, that the Board must be represented *exclusively* by its general counsel. To the extent it is authorized by law to do so, the Board also may retain outside counsel; but that additional counsel may not be in the service of the Attorney General.

Nor does the plain language of section 186 achieve an absurd result. The Legislature may well have been concerned about the possibility or appearance of impropriety in the Attorney General's simultaneous representation of the Board, an administrative decisionmaking body, and another state agency involved in litigation concerning affairs of the Board. The plain language of section 186 allows no exception based on a waiver by the Board and the other state agency of any conflict of interest.

However, we agree with the Board that the court erred by, in the Board's words, "refus[ing] to allow the [Attorney General] to represent the [Board] even if [DF&G] employed counsel other than the [Attorney General], thereby removing the case from the prohibition of . . . section 186 . . . ."

The statutory prohibition of simultaneous representation by the Attorney General applies solely where "another state agency, *represented by the [Attorney General]*, is a party to the action." (§ 186, italics added.) If DF&G retains outside counsel in substitution for the Attorney General, the statutory prohibition no longer will apply. (See Gov. Code, § 11040, subds. (a) & (c); *People ex rel. Dept. of Fish & Game v. Attransco, Inc.* (1996) 50 Cal.App.4th

1926, 1930-1937 [58 Cal.Rptr.2d 661] [DF&G may hire outside counsel if written consent is obtained from the Attorney General].)[5]

## IV

■ Lastly, we reject the argument of YCWA and Browns Valley that the doctrines of unclean hands and laches preclude us from granting relief.

YCWA and Browns Valley argue the doctrine of unclean hands applies because the Board acted illegally in violating section 186, and the Attorney General improperly raised a "joint defense privilege" when the deputy attorney general representing the Board asserted the consent agreement between DF&G and the Attorney General was privileged even after he had reviewed it. The contention fails.

Although incorrect, the Board's challenge to the language of section 186 is not frivolous. And, when challenged for its failure to comply with section 186, the Board sought to achieve a legitimate outcome under the statute, i.e., DF&G's representation by substitute counsel and the Board's continued representation by the Attorney General At worst, the Board's assertion of a joint defense privilege could be construed as a waiver of the attorney-client privilege as to the consent agreements by DF&G and the Board. (Evid. Code, § 912, subd. (a).) In any event, the Board and DF&G have filed in this court unsealed copies of the consent agreements. Thus, the unclean hands contention has no merit.

As to laches, YCWA and Browns Valley complain that the Board unreasonably delayed proposing that the Attorney General withdraw as DF&G's counsel. But our review of the record reveals the Board suggested the remedy of substitute counsel for DF&G at its earliest opportunity, i.e., when the Board filed its opposition to the motion to disqualify.

---

[5]DF&G has provided us with a copy of a consent agreement, dated April 19, 2001, in which DF&G and the Attorney General agree that DF&G "may employ counsel other than [the Attorney General] to represent [DF&G] in the lower Yuba River matter where [DF&G] and [the Attorney General] have complied with the requirements of sections 11040 through 11044 of the Government Code." Believing this agreement had been lodged with respondent superior court, we directed the court to transmit the document to us. Because the court has informed us that the document was neither lodged nor filed with that court, we decline to consider it. (See *Morris Stulsaft Foundation v. Superior Court* (1966) 245 Cal.App.2d 409, 417-418, & fn. 9 [54 Cal.Rptr. 12].) On remand, however, the Board may present evidence that DF&G, with the Attorney General's consent, has obtained counsel to substitute in the place of the Attorney General.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of October 3, 2001, granting the motion to disqualify the Attorney General; to reconsider the motion, taking into account whether DF&G has retained counsel to substitute for the Attorney General to represent DF&G in the underlying proceedings; and to take further action consistent with the views expressed in this opinion.

Upon finality of this opinion, the stay of further proceedings in respondent superior court is vacated. The parties shall bear their own costs in this writ proceeding. (Cal. Rules of Court, rule 56.4(a).)

Sims, J., and Robie, J., concurred.