Filed 12/11/14  Kainth v. Pannell CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDWIN KAINTH et al., Cross-complainants and Appellants, v. BRENDA PANNELL, Cross-defendant and Appellant. | F065783 (Super. Ct. No. CV002361) **OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti, Judge.

J. M. Irigoyen; Walter and Wilhelm Law Group and Tracy E. Blair for Cross-complainants and Appellants.

Murphy, Pearson, Bradley & Feeney, Timothy J. Halloran, Robert W. Lucas, and Karen K. Stromeyer for Cross-defendant and Appellant.

-ooOoo-

**PROCEDURAL BACKGROUND**

The instant appeal has a unique procedural history.  It began with the filing of a sexual harassment suit by Tammia Gunnuscio against her former employer Edwin Kainth

(also known as Edwin K. Anthony), Lal Kasturi and Courtyard by Marriott Merced (collectively Kainth). In response to that suit and shortly after filing an answer to Gunnuscio's first amended complaint, Kainth filed a verified cross-complaint against Brenda Pannell alleging numerous causes of action, including, but not limited to, invasion of privacy (third cause of action), breach of fidelity duty (fourth cause of action), breach of lawyer's duty not to use inadvertently disclosed confidential information (fifth cause of action), and breach of trust (sixth cause of action). Simultaneously, Kainth also moved to disqualify Pannell as Gunnuscio's attorney, contending Pannell had acted as his attorney previously and, in that capacity, had been provided confidential business information that she then used against him.

Ultimately, the motion to disqualify Pannell was heard and denied by the trial court and Kainth appealed that ruling on July 23, 2012. We affirmed the trial court's denial of the motion to disqualify Pannell (*Gunnuscio v. Kainth* (Apr. 17, 2014, F065448) [nonpub. opn.] [2014 Cal.App.Unpub. LEXIS 2765, 2014 WL 1512807]).[1] Kainth did not seek review of our holding and a remittitur issued June 17, 2014.

Meanwhile, the proceedings below continued. On July 18, 2012, Pannell filed a special motion to strike Kainth's cross-complaint pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[2] Following hearing and argument, on August 28, 2012, the trial court granted the motion in part and denied the motion in part. Both Kainth and Pannell appeal from the trial court's determination.[3]

---

[1]We take judicial notice of our own records pursuant to Evidence Code section 452, subdivision (d).

[2]The term "SLAPP" is "an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

[3]On September 26, 2012, Kainth filed a petition for writ of supersedeas in this action. We denied the petition on September 27, 2012.

2.

Kainth asserts the following arguments: (1) Pannell lacked standing to bring the anti-SLAPP motion because it was based upon her client's rights; (2) the trial court erred by striking the first and second causes of action because conspiracy and aiding and abetting are theories of liability rather than causes of action; and (3) the trial court erred by striking the seventh and eighth causes of action pertaining to negligent and intentional infliction of emotional distress because they "derived from un-stricken causes of action."

On the other hand, Pannell contends: (1) the first prong of the anti-SLAPP statute was met as to the third through sixth causes of action because the gravamen of those claims arose from protected activity, therefore, the trial court erred in finding otherwise; and (2) Kainth cannot establish a probability of prevailing on the merits because no evidence whatsoever was presented in support of each element in his third through sixth causes of action.

## DISCUSSION

### I.  Pannell's Appeal of the Trial Court's Determination

We choose to begin with Pannell's claims on appeal as those claims would require us to address issues we have already decided. And because we have already decided those claims adversely against Kainth and in favor of Pannell, we find it unnecessary to reach the merits of Pannell's assertions on appeal here.

#### The Law of the Case Doctrine

##### 1.    *Legal Standards*

"'The law of the case doctrine states that when, in deciding an appeal, an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal."' [Citation.]" (*Quackenbush v. Superior Court* (2000) 79 Cal.App.4th 867, 874.) The doctrine applies to a rule of law necessarily decided in an appellate decision and determines "'the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301–302.)

3.

"The 'law of the case' doctrine … precludes a party from obtaining appellate review of the same issue more than once in a single action. When a reviewing court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, ….' (*Tally v. Ganahl* (1907) 151 Cal. 418, 421; see also *People v. Stanley* (1995) 10 Cal.4th 764, 786; accord, *People v. Shuey* (1975) 13 Cal.3d 835, 848.)" (*Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App.4th 47, 62.)

In order for the doctrine to apply, "'the point of law involved must have been necessary to the prior decision [and] the matter must have been actually presented and determined by the court, ….' [Citations.]" (*People v. Shuey*, *supra*, 13 Cal.3d at p. 842, overruled on other grounds in *People v. Bennett* (1998) 17 Cal.4th 373, 389, fn. 5.) The law of the case doctrine is designed to prevent repetitive litigation of the same issue in a single criminal or civil case. (*People v. Boyer* (2006) 38 Cal.4th 412, 441, citing *People v. Whitt* (1990) 51 Cal.3d 620, 638; *People v. Shuey*, *supra*, at p. 841.)

### 2. Our Prior Opinion

In a prior appeal following the denial of his motion to disqualify Pannell as Gunnuscio's attorney, Kainth argued the trial court erred because Pannell had previously acted as Kainth's attorney and, in that capacity, had access to confidential records. Specifically, he claimed Pannell should be disqualified because the trial court failed to consider his subjective beliefs about the existence of an attorney-client relationship, because Pannell breached a duty of fidelity owed to him, and because Pannell received confidential business information from Kainth. (*Gunnuscio v. Kainth*, *supra*, F065448 [2014 Cal.App.Unpub. LEXIS 2765, 2014 WL 1512807].) We concluded otherwise, however, following our review of the record designated by both parties.

First, we determined the court did in fact consider Kainth's subjective belief, but it properly determined that belief was insufficient to establish an attorney-client relationship between Kainth and Pannell in the absence of additional credible evidence. We stated "the trial court did not abuse its discretion in determining there was no attorney-client relationship or implied-in-fact attorney-client contract between [Kainth]

4.

and Pannell." Second, concerning Kainth's argument that the trial court failed to consider disqualification based upon Pannell's breach of the duty of fidelity, we determined the trial court did consider that purported basis and found the evidence lacking: "Here, there is only [Kainth]'s declaration that Pannell owes him a duty of fidelity … [but] there is evidence directly contradicting [Kainth]'s position. That evidence comes in the form of Pannell's declaration to the contrary; a position that is further supported by the declaration of … Gunnuscio" and an exhibit to Pannell's declaration in the form of deposition transcripts taken in an unrelated federal action. We held there was no evidence Pannell had access to Kainth's business records, and thus, "Pannell did not breach a duty of fidelity owed to" Kainth. Lastly, we determined that even in light of Kainth's subjective belief that Pannell was his attorney, and his belief that she possessed confidential information, the trial court did not err in finding there was insufficient evidence of Pannell receiving confidential information that would provide an advantage in the litigation between Gunnuscio and Kainth. In fact, the evidence supported Pannell's position that she had no access to, nor did she ever receive, confidential business information. (*Gunnuscio v. Kainth*, *supra*, F065448 [2014 Cal.App.Unpub. LEXIS 2765, 2014 WL 1512807].) Kainth did not seek review following the issuance of our April 17, 2014, opinion and a remittitur issued June 17, 2014. Therefore, it is final. (Cal. Rules of Court, rules 8.264 & 8.272.)

### 3. *Analysis*

Here, the merits of the third through sixth causes of action in Kainth's cross-complaint against Pannell—requiring the existence of an attorney-client relationship and Pannell's access to or receipt of Kainth's confidential business records information—have already been decided by this court. We affirmed the denial of Kainth's motion to disqualify Pannell as Gunnuscio's attorney. Because those very points of law were necessary to our determination, and the matter was actually presented and determined, the law of the case doctrine applies to this appeal. (*People v. Shuey*, *supra*, 13 Cal.3d at p. 842.) Considering Pannell's claims in this appeal would result in Kainth obtaining a

second review of the trial court's determination of his motion to disqualify Pannell as Gunnuscio's attorney. This we will not do. (*Katz v. Los Gatos-Saratoga Joint Union High School Dist.*, *supra*, 117 Cal.App.4th at p. 62.)

We recognize the trial court did not have the benefit of our opinion when it ruled on Pannell's anti-SLAPP motion to Kainth's cross-complaint. The trial court made its ruling on August 28, 2012. Our previous opinion was filed on April 17, 2014. Nevertheless, the principles of law necessary to this court's decision became the law of the case and must be adhered to both in the court below and upon any subsequent appeal. (*Gunn v. Mariners Church*, *Inc.* (2008) 167 Cal.App.4th 206, 213.) Therefore, for purposes of *this appeal*, our prior findings have become the law of the case.

We recognize, too, that a motion to disqualify counsel does not typically resolve the merits of a cause of action. (*Varian Medical Systems*, *Inc. v. Delfino* (2005) 35 Cal.4th 180, 193, citing *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 453-455.) However, this is an unusual case. Because Kainth's third through sixth causes of action *require* the existence of an attorney-client relationship and evidence of access to or receipt of confidential business information, and because we previously addressed those claims in Kainth's appeal from his failed motion to disqualify Pannell, the merits have already been resolved against him.

In his verified cross-complaint, Kainth's claims against Pannell are based on the same set of operative facts as the claims raised in Kainth's motion to disqualify Pannell as Gunnuscio's attorney. As relevant here, in his third cause of action for invasion of privacy, Kainth asserts Pannell "breached and abused" his trust by accessing and using "confidential private, personal, business, employment, financial, and tax records" for her own benefit, that he had a legally protected privacy interest in those records and expected Pannell to use them "if at all, to render legal advice," and as a result of her actions his rights were seriously affected and he suffered damages. This claim requires a finding that an attorney-client relationship existed between Kainth and Pannell and that Pannell

6.

received confidential information from Kainth. However, we have already decided both of those claims adversely to Kainth on the merits.

In his fourth cause of action for a breach of fidelity duty, Kainth asserts he had an attorney-client relationship "or its functional equivalent" with Pannell, that she acquired confidential information as a result of that relationship and used it "as the basis of the underlying complaint and to litigate it, changing sides to represent" Gunnuscio, and breaching her duty of fidelity. Again, we have already decided both of those issues adversely to Kainth in the prior appeal.

In his fifth cause of action for a breach of lawyer's duty not to disclose confidential information, Kainth asserts Pannell is an attorney who in the course of her relationship with Kainth "was inadvertently provided with confidential and privileged information," which she then used to sue him, thereby breaching her duty as an attorney. This claim, too, requires the existence of an attorney-client relationship; we have already reviewed Kainth's claim to the existence of such a relationship, on the merits, and found it lacking. There was no evidence of an attorney-client relationship save and except Kainth's belief in one. This claim also requires access to and disclosure of confidential information; we have also already determined no such access to or receipt of confidential information by Pannell occurred.

Finally, in his sixth cause of action for breach of trust, Kainth contends he entrusted Pannell "with the private, confidential and privileged information" in his computers, that he did not give her permission to use the information other than to "render legal advice," and that she misappropriated and used the information to sue him in breach of his trust. As with the previous claims, we have already determined Pannell did not breach any duty of trust owed because no attorney-client relationship existed, and Pannell did not gain access to or receive any confidential information belonging to Kainth.

We will not ignore our previous findings. Therefore, in whatever procedural posture those claims now present themselves, the law of the case allows us to find for

7.

Pannell against Kainth on these claims. (E.g., *Bergman v. Drum* (2005) 129 Cal.App.4th 11, 15, fn. 3 ["The doctrine of law of the case may be applicable where the prior appeal is from a decision short of a full trial, such as a judgment on demurrer or an order of nonsuit, or in this case, an order denying a anti-SLAPP motion to strike a complaint"].)

We note, too, Kainth himself appreciated the potential significance of our ultimate determination following his appeal. For example, Kainth sought a stay of the anti-SLAPP motion, arguing such a stay was mandated by section 916, subdivision (a)[4] because an appeal was pending on the denial of his motion to disqualify Pannell as Gunnuscio's attorney. More particularly, he expressly stated Pannell's motion was "based, in part, on exactly the issues appealed regarding whether an attorney-client [relationship] existed … and whether confidential information had passed" between he and Pannell. Further, in Kainth's "Tentative 425.16 Opposition And Attorneys Fees Request," he argued the issues of whether an attorney-client relationship existed and whether Pannell received confidential information were "not subject to res judicata or collateral estoppel until a final appellate decision" issued. Kainth's attorney declared, in support of that opposition, that "until the Appellate Court renders a final judgment on the issues appealed," he could not "make a final and complete opposition" to the motion.

"The primary purpose served by the law-of-the-case rule is one of judicial economy. Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding." (*Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435.) Applying the law of the case here promotes the primary purpose to be served: judicial economy. We are preventing repetitive litigation of the same issues in

---

[4]Subdivision (a) of section 916 provides as follows: "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

8.

the same civil case by applying the law of the case. (*People v. Boyer*, *supra*, 38 Cal.4th at p. 441.)

Moreover, Kainth did not present any additional evidence regarding the attorney-client relationship and confidential records issues in his opposition to Pannell's section 425.16 motion. In fact, in the points and authorities in support of his ex parte request for a stay of that same motion, Kainth referenced "the vast number of pleadings required of the disqualification motion and the one hour and a half hour of oral argument" on that motion. Therefore, application of the doctrine to this case does not result in substantial injustice. (*Searle v. Allstate Life Ins. Co.*, *supra*, 38 Cal.3d at pp. 434-435.) Kainth has already had his day in court on these claims. We conducted a review of the numerous pleadings and documents filed both in support of and in opposition to the motion. We then affirmed the trial court's denial of Kainth's motion to disqualify Pannell as Gunnuscio's attorney.

In summary, our prior opinion in case number F065448 is the law of the case. As explained above, claims three through six in Kainth's cross-complaint against Pannell have already been decided, on their merits, adversely to Kainth. We will not now relitigate those issues by virtue of this appeal.

## II. Kainth's Appeal of the Trial Court's Determination on the First, Second, Seventh and Eighth Causes of Action

Because the first, second, seventh, and eighth causes of action of Kainth's cross-complaint allege facts over and above those alleged in causes of action three through six of that same pleading, the law of the case doctrine does not apply.

### A. Preliminary Matter Concerning the Briefing

In Kainth's opening brief, the arguments asserted are cursory at best. More specifically, his first argument comprises but two paragraphs and cites to a single case as legal authority; his second argument comprises a single paragraph lacking any meaningful legal analysis of the three legal authorities cited therein; and, finally, his third argument comprises a total of three paragraphs, the first of which contains the only legal

authority cited therein and, again, lacks any meaningful legal analysis. Additionally, Kainth's second argument lacks any citation to the record.

"'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'" (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793.) Where an issue is unsupported by pertinent or cognizable legal argument, it may be deemed abandoned and any discussion by the reviewing court is unnecessary. (*Taylor v Nabors Drilling USA*, *LP* (2014) 222 Cal.App.4th 1228, 1247-1248 [the "excessive noneconomic damages issue is forfeited because the single paragraph on this issue is devoid of meaningful legal analysis"]; *Taylor v. Roseville Toyota*, *Inc*. (2006) 138 Cal.App.4th 994, 1001, fn. 2 [a point merely asserted on appeal without argument or authority is forfeited].) Where a party fails to support an appellate argument with the necessary citations to the record, the argument will be deemed to have been waived. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Sky River LLC v. Kern County* (2013) 214 Cal.App.4th 720, 741 [rule 8.204(a)(1)(C) applies to matters referenced at any point in brief, not just in statement of facts]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; see *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195.)

Further, to the extent Kainth provides sufficient legal arguments in his reply brief, we disregard them because of their tardiness. As previously noted, an appealing party is required to provide pertinent legal arguments, with citation to authority where possible. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Arguments raised for the first time in the reply brief are considered untimely and may be disregarded by the reviewing court. (See, e.g., *Shade Foods*, *Inc. v. Innovative Products Sales & Marketing*, *Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10.) "Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3; see *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1072; see also *Taylor v. Roseville Toyota*, *Inc.*, *supra*, 138 Cal.App.4th at p. 1001, fn. 2.) Kainth may contend

that he provided his reply brief arguments in rebuttal to the arguments made in Pannell's brief; however, we do not agree. Kainth made only cursory presentations of his arguments in the opening brief. He should have provided the more extensive arguments in the opening brief rather than in his reply brief. Providing cursory arguments in one's opening brief, then arguing extensively only after respondent's brief has been filed, is unacceptable.

### B. The Relevant Legal Standards and Standard of Review

Section 425.16, subdivision (b)(1) provides:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

An act in furtherance of a person's right of petition or free speech broadly includes, among other things, "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(4).)

"[T]he Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315.) "'[T]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts [in meritless litigation] because you exercised your constitutional rights.' [Citations.]" (*Varian Medical Systems*, *Inc. v. Delfino*, *supra*, 35 Cal.4th at p. 193.) The resolution of an anti-SLAPP motion requires the court to engage in a two-step process: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.… [Second, i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v.*

11.

*Consumer Cause*, *Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).)  However, "'[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'  [Citation.]" (*Oasis West Realty*, *LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

We review de novo the trial court's ruling on an anti-SLAPP motion.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  "Resolving the merits of a section 425.16 motion involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits.  [Citation.]" (*Overstock.com*, *Inc. v. Gradient Analytics*, *Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock.com*).)  In our de novo review, "'[w]e consider "the pleadings, and supporting and opposing affidavits … upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro*, *supra*, at p. 326.)

More specifically, under the first step or prong of the analysis under section 425.16, the moving party must make a threshold showing that the challenged cause of action arose from protected activity within the meaning of the statute.  (§ 425.16, subd. (b)(1); *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67; *Overstock.com*, *supra*, 151 Cal.App.4th at p. 699.)  The activity protected by section 425.16 is described in subdivision (e) thereof, and includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding …" and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body …." (§ 425.16, subd. (e)(1), (2).)

As to the second prong of the analysis, in order to establish a probability of prevailing on a cause of action, a plaintiff must state and substantiate a legally sufficient claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' [Citation.]" (*Ibid.*) That is, the plaintiff must "'"'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.'"' [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; however, the court does not weigh the credibility or comparative probative strength of competing evidence. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

> "Precisely because the statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com*, *supra*, 151 Cal.App.4th at pp. 699–700.)

The plaintiff need only show a "minimum level of legal sufficiency and triability" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5), or a case of "'minimal merit'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 95, fn. 11). Thus, the standard is similar to that employed in determining summary judgment, directed verdict, or nonsuit motions. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 990.) "Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.]" (*Varian Medical Systems, Inc. v. Delfino*, *supra*, 35 Cal.4th at p. 192.)

13.

### 1. Pannell's Standing

First, in a conclusory two-paragraph argument, Kainth contends Pannell lacks standing to bring an anti-SLAPP motion because the motion is based on her client's rights, rather than her own. Pannell counters that she has standing because the motion is based on her own petitioning activity in connection with her client's litigation.

An attorney has standing to bring a special motion to strike a cause of action arising from petitioning activity undertaken on behalf of the attorney's client. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056 [for purposes of anti-SLAPP statute, which provides a basis for a motion to strike a cause of action arising from any act of a person in furtherance of the person's right of petition or free speech, "any act" includes qualifying acts committed by attorneys in representing clients in litigation]; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262, fn. 6.)

Here, it is plain Pannell had standing to bring an anti-SLAPP motion because the motion was based on her own petitioning activity *on behalf of* Gunnuscio. Stated another way, Pannell's motion is the direct result of Pannell having filed a civil action on behalf of her client Gunnuscio against former employer Kainth, who then responded with a cross-complaint against Pannell. Hence, Pannell had standing to bring the anti-SLAPP motion.

### 2. The First & Second Causes of Action

In an argument encompassing less than a single page, and lacking meaningful analysis as well as citation to the record, Kainth asserts the trial court erred in striking the first and second causes of action because conspiracy and aiding and abetting are theories of liability rather than causes of action. Pannell responds that, while the statute does not define "cause of action," that section uses the terms "cause of action," "claim," "complaint," and "action" interchangeably. Further, she maintains that applying section 425.16 to the conspiracy and aiding and abetting theories of liability is consistent with previous applications of the statute by courts of this state.

In relevant part, the trial court ruled as follows:

14.

"As for the remaining 1st and 2nd COA, after oral argument the court reconsidered its tentative ruling to deny the anti-SLAPP motion. After further consideration, the court GRANTS the anti-SLAPP motion as to these COA's as well in that Pannell has met her threshold showing for the reasons described ¶A1 above (see ¶¶ 1(f), 4 of the cross-complaint). In essence, the 1st and 2nd COA charge that Pannell engaged in a conspiracy to invade [Kainth's] privacy by gathering information for the purposes of bringing a lawsuit. Accordingly, one or more of the wrongful acts alleged as the basis for these claims were in furtherance of Gunnuscio's right of petition and [Kainth has] not offered evidence demonstrating a probability of prevailing on these claims."

As explained in *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1181, at footnote 5, it is not clear what the Legislature's use of the phrase "cause of action" means for purposes of the anti-SLAPP statute. The *Wallace* court noted that "[a]t least two cases have defined 'cause of action' in section 425.16 using the primary right theory," while a "more colloquial meaning—and one that other courts have assumed without analysis in anti-SLAPP cases—refers to the allegations" grouped together by a plaintiff under the heading of "cause of action" as more accurately a "count." (*Ibid.*) Thus, while "'cause of action' may have a narrower definition, such that a 'cause of action' arising from protected activity refers to the allegations purporting to base liability specifically on activity set forth in section 425.16, subdivision (e)," (*ibid.*) like the *Wallace* court, we need not concern ourselves with the issue for purposes of the first prong of anti-SLAPP analysis; "all of these definitions lead to essentially the same question: is the primary right, count, or assertion of liability based on the defendant's protected activity?" (*Ibid.*)

Here, then, the question before us is whether, regardless of its name or label, the assertion of liability by cross-complainant Kainth is based on cross-defendant Pannell's protected activity? A review of the record reveals the answer is yes.

In his verified cross-complaint, Kainth alleged that Gunnuscio and Pannell conspired with one another, and that Pannell aided and abetted Gunnuscio by obtaining confidential information forming the basis of Gunnuscio's complaint against Kainth, in violation of his privacy. The filing of the civil sexual harassment complaint or action is a protected activity (§ 425.16, subd. (e)(1), (2)) that preceded the filing of Kainth's cross-

complaint against Pannell. The trial court's determination, properly treating the first and second counts of the cross-complaint as causes of action for purposes of its analysis, is supported by the record. Pannell made the required threshold showing the challenged activity arose from a protected activity, to wit: filing a civil complaint on behalf of her client Gunnuscio against Kainth. (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67; *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 489 [the threshold "burden is satisfied by demonstrating that the conduct underlying the (cross-complainant's) claim fits into a category of protected activity set forth in section 425.16, subdivision (e)"].) Since Kainth does not challenge the trial court's determination that he did not demonstrate a probability of prevailing on these claims, the trial court properly struck these causes of action.

### 3. *The Seventh & Eighth Causes of Action*

Finally, in a three-paragraph argument lacking meaningful legal analysis, Kainth maintains the trial court erred by striking the causes of action pertaining to negligent and intentional infliction of emotional distress because those claims were "derivative of the un-stricken causes of action." He contends that because the intentional and negligent infliction of emotional distress claims were "based exclusively on Pannell's tortious invasion of privacy, breach of fidelity, trust, and not to inadvertently disclose confidential information," those emotional distress claims are strictly related and overlap with the invasion of privacy, breach of fidelity duty, improper disclosure of confidential information by attorney, and breach of trust claims, such that they "should not have been stricken." Pannell contends the trial court correctly determined those causes of action emanated from petitioning activity subject to anti-SLAPP protection.

As to this cause of action, the trial court found the following:

"The anti-SLAPP motion is granted as to the 7th and 8th COA. Pannell has met her threshold burden of showing that these causes of action 'arise from' protected activity, as referenced in the cross-complaint at ¶¶ 1(f), 9, 18, 25 (use of [Kainth's] private information as the base for Gunnuscio's complaint to sue [Kainth]) all of which are incorporated by reference within the 7th and 8th COA. This alleged conduct is in furtherance of

16.

Gunnuscio's constitutional right of petition (425.16(e)), or at least are 'mixed' causes of action based on both protected and unprotected activity as defined by *Martinez* and *Salma* …. As [Kainth has] not submitted any evidence to support these claims or to overcome the defenses thereto, [Kainth has] not met their burden of demonstrating a probability of prevailing on these claims." (Fn. omitted.)

In relevant part, the intentional and negligent infliction of emotional distress causes of action asserted that Pannell and Gunnuscio's use of "information to sue" is the basis for Kainth suffering serious, or severe and extreme, emotional distress. Additionally, the following colloquy occurred at the hearing on the motion:

"THE COURT: What about on the emotional distress claims? You don't—your client doesn't claim emotional distress, whether it's the corporation or a private party. However, that's a different issue, but it doesn't claim the emotional distress occurs until the claim is filed. [¶] So the gravamen seems to be the filing of the Complaint.

"MR. IRIGOYEN: And, Your Honor, the Court may be correct on that, and so on the last two causes of action, I will just submit it."

Kainth's counsel all but concedes that the claims arise from protected activity. In fact, earlier in that same proceeding, Kainth's counsel stated "the fact that [Pannell] was using that information and changing sides did not come to light until the lawsuit was filed. [Kainth] had no idea …."

In conclusion, our independent review of the record supports the trial court's finding that these causes of action arise from Pannell's activity of filing a civil complaint on behalf of her client Gunnuscio. As a result, Pannell met her burden under the first prong of the required statutory analysis. Since Kainth does not challenge the trial court's determination that he did not demonstrate a probability of prevailing on these claims, the trial court did not err in granting Pannell's motion on these counts.

## DISPOSITION

Pannell's appeal regarding the trial court's denial order on her section 425.16 motion, and the third through sixth causes of action in Kainth's cross-complaint in particular, is rendered moot by our opinion in the previous appeal in this case and

17.

application of the law of the case doctrine.  The trial court did not err by granting Pannell's section 425.16 motion as to the first, second, seventh and eighth causes of action in Kainth's cross-complaint and that order is affirmed.  Accordingly, the matter is remanded with directions that the trial court grant Pannell's motion to strike the cross-complaint in its entirety.  Pannell is awarded her costs on appeal.

_____

PEÑA, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

DETJEN, J.